# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

TAMARA FAVAZZA,              )
                              )
          **Plaintiff,**        )
                              )
      **vs.**                )       **Case No. 4:12cv1561 TCM**
                              )
PATH MEDIA HOLDINGS, LLC, et al.,   )
                              )
        **Defendants.**     )

## <u>MEMORANDUM AND ORDER</u>

Pending in this case is the unopposed motion of Tamara Favazza ("Plaintiff") requesting summary judgment on the remaining three counts[1] in her first amended complaint against Joseph R. Francis ("Francis") and thirteen entities she alleges he dominates, controls, and influences.[2] In Count I, she alleges that Francis has violated the Missouri Fraudulent Transfer Act, Mo. Rev. Stat. § 428.024, by his various maneuvers; in Count II, she alleges that the defendant entities are the alter egos of Francis and seeks a declaratory judgment holding so; and in Count III, she alleges that the maneuvers at issue in Count I also violate the California Fraudulent Transfer Act. The thirteen entities are Path Media Holdings, LLC ("Path Media"); GGW Brands, LLC ("GGW Brands"); GGW Brands, Inc. ("GGW Inc."); GGW Direct, LLC ("GGW Direct"); GGW Events, LLC ("GGW Events"); GGW Magazine, LLC ("GGW Magazine"); GGW Marketing, LLC ("GGW Marketing"); Pepe Bus, LLC

---

[1] Plaintiff previously voluntarily dismissed a fourth count alleging a civil conspiracy.

[2] The case is before the undersigned United States Magistrate Judge by written consent of the parties. <u>See</u> 28 U.S.C. § 636(c).

("Pepe Bus"); Aero Falcons, LLC ("Aero"); Blue Horse Trading, LLC ("Blue Horse"); Mantra Films, Inc. ("Mantra"); MRA Holdings, LLC ("MRA"); and J.F., LLC ("J.F.").[3]

## Background

Plaintiff sued Mantra and MRA in the Circuit Court for the City of St. Louis, Missouri, alleging that she was socializing in May 2004 with friends at a nightclub, the Rum Jungle, when she was approached by two agents/employees of Mantra and MRA. (Pl.'s Ex. 1 at 2-3.) The two filmed Plaintiff as they approached her. (Id. at 3.) One of the two then pulled the straps of Plaintiff's tank top down, causing her breasts to be exposed and filmed. (Id. at 4.) The exposure and filming were done without Plaintiff's prior knowledge and without her consent, express or implied. (Id.) The film of Plaintiff's exposed breasts has been included in four DVDs sold with a "Girls Gone Wild" title (the "Sorority Orgy DVDs"). (Id.) Plaintiff has never consented to this invasion of her privacy. (Id. at 5.) Plaintiff sought damages under theories of tort, negligence per se under 18 U.S.C. § 2257,[4] invasion of privacy – unreasonable publicity, invasion of privacy – false light, invasion of privacy – wrongful commercial appropriation of her image, and unjust enrichment.

---

[3]The following entities have since filed for bankruptcy protection: GGW Brands, LLC; GGW Direct LLC; GGW Events, LLC; GGW Magazine, LLC; GGW Marketing, LLC; Mantra Films, Inc.; and MRA Holdings, LLC. The action is stayed as to these defendants. Thus, the remaining entities are Path Media; GGW Inc.; Pepe Bus; Aero; Blue Horse; and J.F. See 11 U.S.C. § 362 (providing for automatic stay of litigation on filing for bankruptcy).

[4]Title 18 U.S.C. § 2257 sets forth record keeping requirements for the production of, among other things, films, videotapes, or digital images including visual depictions of a human being engaged in sexually explicit conduct.

Following a trial in July 2010, the jury found in Plaintiff's favor on her negligence per se claim, but awarded her no damages. (Pl.'s Ex. 2 at 1.) The jury found in favor of Mantra and MRA on the other claims. (Id.) Plaintiff moved for a new trial as to all claims but her negligence per se claim. (Id. at 2 n.1.) In granting her motion, the court found as follows.

> The evidence at trial was that plaintiff went to the Rum Jungle with her cousin and a couple of girls she worked with after she got off work. They arrived between eight and ten p.m. and stood in a line waiting to get in. Plaintiff said she was familiar with Girls Gone Wild from television commercials but she did not recall knowing that there was a Girls Gone Wild event going on at the Rum Jungle when she arrived. After she had been there for a while she became aware that a Girls Gone Wild event was going on and that there was a person with a camera filming people in the bar. At some point she was in front of the camera while she was dancing. She said she was grabbing onto her top but she did not expose her breasts. While she was dancing in front of the camera another person reached over and pulled her top down exposing her breasts. It is clear from viewing the video that plaintiff was an unwilling participant in the exposure of her breasts and she can be seen visibly mouthing "no" and she immediately covered herself up after her top was pulled down. Plaintiff said she did not see any notices posted on the walls or doors about the videotaping that was going on inside. The defendants had written and/or filmed oral waivers from other participants but they did not produce any written or oral waiver by plaintiff in which she authorized the defendants to make use of her image in commercial film products or advertisements.

> . . .

> Defendants made use of plaintiff's image by splicing a clip of the video of plaintiff into the midst of pornographic material such as the Sorority Orgy DVDs.

(Id. at 5, 7.) A new trial was granted on the four challenged claims. (Id. at 8.)

Following the new trial, at which neither Mantra nor MRA appeared, the court found that past gross sales of the Sorority Orgy DVDs with Plaintiff's image, projected future sales of such DVDs, Plaintiff's past diminished value of life, and her future diminished value of

life resulted in damages of $5,772,558.00. (Pl.'s Ex. 3 at 2.) The court entered judgment on March 5, 2012, in Plaintiff's favor for that amount. (Id.)

Mantra and MRA moved to set aside the judgment or for a new trial. (Pl.'s Ex. 4.) The motion was denied. (Pl.'s Ex. 5.) An appeal from the order denying the motion was filed, but not perfected. (Pl.'s Exs. 6, 7.) It was dismissed in March 2013. (Pl.'s Ex. 7.)

Mantra was incorporated by Francis in Oklahoma in June 1999 and registered one week later in California as a foreign corporation. (Pl.'s Ex. 12.) The registered agent was Brian Rayment.[5] (Id. at 2.) In a June 2002 Statement by Foreign Corporation filed with the Secretary of State for California, Francis is listed as the president and chief executive officer ("CEO") of Mantra.[6] (Pl.'s Ex. 13.)

In September 2006, Mantra's Board of Directors met to authorize Mantra to enter into a plea agreement in a criminal case pending in the United States District Court for the

---

[5]Rayment was later sued by Francis, Mantra, and GGW, Inc., for a return of legal fees allegedly overpaid. (Pl.'s Ex. 15.) The suit alleged that Francis was the principal shareholder of Mantra and GGW, Inc. (Id. at 3.) This suit ended in Rayment's favor. (Pl.'s Ex. 92 at 9.)

[6]In the only other Statement of Information filed for Mantra with the California Secretary of State, the box indicating that there had been no change in any of the information earlier filed was marked. (Pl.'s Ex. 14.) This Statement was filed in August 2010. Other indicia of Francis' ownership and control of Mantra include a September 2012 response by the California Secretary of State to an inquiry as to the status of Mantra listing Francis as the CEO of Mantra. (Pl.'s Ex. 16.) On a Corporate Ownership Statement filed in April 2013 with the United States Bankruptcy Court for the Central Division of California, Francis marked that he was "the president or other officer of an authorized agent" of Mantra. (Pl.'s Ex. 17.) On the other hand, Francis testified under oath in a November 2012 examination of a judgment debtor that he ceased control or involvement in Mantra in 2008 or 2009 and that he no longer owned stock in Mantra. (Pl.'s Ex. 20 at 40, 42.) He further testified that in 2008 that he was the CEO of MRA and then testified that he was not. (Id. at 46, 48.) In a deposition taken pursuant to an unrelated action against Francis, Rayment testified that Francis was the president of Mantra. (Pl.'s Ex. 21 at 69.)

Northern District Florida, <u>United States v. Mantra Films, Inc.</u>, Case No. 5:06CR78/RS  (Pl.'s Ex. 22.)  Francis was the only Director.  (<u>Id.</u>)  Francis authorized and appointed Scott Barbour to act as the attorney in fact for Mantra for purposes of those proceedings and also elected him to serve as president of Mantra for one year.  (<u>Id.</u>)  Two weeks later, Barbour signed a plea agreement on Mantra's behalf, pleading guilty to three counts of violating 18 U.S.C. § 2257(f)(1) and three counts of violating 18 U.S.C. § 2257(f)(4) and agreeing to, inter alia, provide access to documents and footage requested by the monitor appointed pursuant to a deferred prosecution agreement between the government and MRA.  (Pl.'s Ex. 23.)  The agreement also included a provision that it was "contingent on the disposition of criminal charges against Joseph Francis, the founder, president, CEO, and sole shareholder of both corporations."  (<u>Id.</u> at 9.)  The underlying offenses occurred in 2002 and 2003.  (<u>Id.</u> at 12-13.)  Two months later, the court ordered Francis to attend and represent Mantra at the sentencing hearing set for the next month.  (Pl.'s Ex. 24.)  The court found it "undisputed" by *both* parties that Francis dominated and controlled Mantra.  (<u>Id.</u>)  The court further found that the earlier Board of Directors meeting was convened "for the sole purpose of appointing a stand-in president to enter the guilty pleas on behalf of [Mantra] so that Francis himself would not be inconvenienced by appearing in court and accepting responsibility."  (<u>Id.</u> at 24.)  Subsequently, sentence was entered in the criminal case requiring Francis to perform thirty consecutive months of community service on behalf of Mantra in the Northern District of Florida.  (Pl.'s Ex. 25.)  Francis' appeal on the grounds that the sentence violated his due process rights because he was not a named defendant was denied.  (<u>Id.</u>)  The Eleventh Circuit

Court of Appeals noted that Francis did not challenge the district court's finding that he was the "'founder, [CEO], sole shareholder, sole director and . . . official representative" of Mantra. (Id. at 5; second alteration in original.)

In its order directing Francis to appear at the sentencing, the court noted that he and Mantra were also defendants in a civil case pending in the Northern District of Florida. (Pl.'s Ex. 24.) On behalf of their minor daughters, five "Does" filed suit against Francis, MRA, Mantra, Aero, and two additional individuals. (Pl.'s Ex. 26.) In a motion filed on their behalf, it was argued that Mantra, MRA, and Aero were each a single member limited liability corporation (LLC) with Francis as the *sole* member.[7] (Id. at 5.) The case settled. (Pl.'s Ex. 27 at 2 n.1.)

Another lawsuit was filed in the Northern District of Florida against Francis, Mantra, and MRA by a plaintiff who alleged that, when she was a minor, she had been coerced into exposing her breasts by a Girls Gone Wild employee. (Id. at 2.) In an appeal from an interlocutory order entered in that case, in February 2011, the Eleventh Circuit characterized Mantra, MRA, and Aero as companies owned or controlled by Francis. (Pl.'s Ex. 28.)

In another lawsuit filed in April 2010 in the Northern District of Florida, a law firm sued Francis, Mantra, MRA, and Aero for fees and costs incurred when representing them in another lawsuit in that district.[8] (Pl.'s Ex. 18.) It was alleged in paragraph two of the

---

[7] In a limited liability company, "[m]ember is synonymous with owner" and "is the equivalent of a shareholder of a corporation." (Pl.'s Ex. 49 at 74.)

[8] The following year, in May 2011, Francis sued the lawyer in California state court for allegedly billing him for fees that had not been agreed upon and for malpractice. (Pl.'s Ex. 59.)

complaint that Francis was the president of Mantra and the managing member of MRA and Aero. (<u>Id.</u> at 1.) Francis, appearing pro se, admitted this allegation in his answer of June 2010. (Pl.'s Ex. 19.) MRA and Aero also admitted the allegations in paragraph two. (Pl.'s Ex. 35 at 2.)

Two years before that suit was filed, Rayment sued GGW Brands, GGW Inc., GGW Direct, GGW Marketing, Mantra, Francis, and three other defendants for attorney's fees, malicious prosecution, abuse of process, disparagement, and emotional distress. (Pl.'s Ex. 92.) The last four causes of action were against Francis only. (<u>Id.</u>) Rayment also alleged that the defendant entities were owned and controlled by Francis; that assets of Mantra had been transferred by Francis to avoid payment of Mantra's debts and to defraud its creditors; and that the defendant entities were "so closely linked and inextricably intertwined with the assets and affairs of . . . Francis so as to be effectively one personality." (<u>Id.</u> at 7-8.) Rayment filed a December 2012 affidavit to the same effect. (Pl.'s Ex. 29.) In January 2013, summary judgment was entered in Rayment's favor by the District Court of Tulsa County in Oklahoma. (Pl.'s Ex. 30.) The court specifically found that all the defendants were individually liable for Mantra's obligations and that they were each the alter egos of the other and were liable for each other's debts. (<u>Id.</u> at 2.)

---

This action was transferred to the Northern District of Florida, consolidated with the law firm's case, and dismissed. <u>See</u> <u>Bateman Harden PA v. Francis</u>, 2012 WL 3689402, *1, 2 (N.D. Fla. Aug. 27, 2012).

While Rayment was pursuing Francis and the various entities in the Oklahoma state court, Wynn Las Vegas, LLC ("Wynn LV"), was pursuing Francis, GGW Direct, GGW Brands, GGW Events, Mantra, and Blue Horse in the District Court for the State of Nevada. (See Pl.'s Ex. 31.) That court entered a preliminary injunction prohibiting any assets of GGW Direct from being transferred, destroyed, or moved. (Id. at 3.) The court found that Francis used GGW Direct to frustrate creditors, particularly Wynn LV; controlled GGW Direct's operations; and was GGW Direct's alter ego. (Id. at 2-3.)

Blue Horse, one of the entities sued by Wynn LV, was incorporated in California in October 2002 as a limited liability company. (Pl.'s Ex. 40.) Its business was real estate acquisition and leasing; the organizer was Shannon Evans. (Id.) Two years later, the only member listed for Blue Horse with the California Secretary of State was a Ronald Guttman. (Pl.'s Ex. 41.) Four years later, in 2008, Francis was listed as the only member. (Pl.'s Ex. 42.) Francis had the same address, however, as had Guttman. (Pl.'s Exs. 41, 42.) In 2012, Francis remained listed with the Secretary of State as the only member of Blue Horse.[9] (Pl.'s

---

[9]In her Statement of Uncontroverted Material Facts, Plaintiff includes eight specific allegations relating to Francis' control, ownership, or domination of Blue Horse. These allegations were included in a Request for Admissions directed to Blue Horse in May 2013. (See Pl.'s Ex. 44.) Plaintiff posits that the requested admissions are deemed admitted because they were not answered or objected to within thirty days of service. The Court notes, however, that service was not made on any attorney representing Blue Horse, but was made on attorneys who at one time in other proceedings represented another party, Rothwell, Ltd.. There being no evidence that the Request for Admissions was properly served on Blue Horse, the Court will not consider the matters therein admitted and declines the request of Plaintiff's counsel in his affidavit to do so. (See Pl.'s Ex. 9 ¶ 27.)

Ex. 43.)  At one time, Blue Horse owned the house in which Francis lived.  (Pl.'s Ex. 21 at

51.)

The same address listed for Blue Horse was listed in June 2006 for GGW Inc. on a

Statement and Designation by a Foreign Corporation filed with the California Secretary of

State.  (Pl.'s Ex. 45.)  Francis signed the Statement as president.  (<u>Id.</u>)  In January 2009,

Francis signed a Certificate of Amendment to the company's Certificate of Incorporation.

(<u>Id.</u>)  A Statement of Information filed for GGW Inc. with the California Secretary of State

in May of that year lists Francis as the CEO, secretary, and chief financial officer.  (Pl.'s Ex.

46.)  In March 2012, GGW Inc. filed a certificate with the California Secretary of State

surrendering its right to transact intrastate business.  (Pl.'s Ex. 50.)  It was signed by Robert

F. Klueger as secretary.  (<u>Id.</u>)  Two months later, GGW Inc. was dissolved as a Delaware

corporation.  (<u>Id.</u> at 3.)  Francis was listed as its president.  (<u>Id.</u>)

Two years before GGW Inc. was dissolved, GGW Direct, GGW Events, GGW

Magazine, and GGW Brands were incorporated in Delaware.  (Pl.'s Exs. 65-66.)  The

following month, in November 2010, a post-production supervisor at Mantra advised counsel

to change all contracts from Mantra to GGW Direct.  (Pl.'s Ex. 71.)  Eric Deutsch, a

corporate officer of Mantra, testified in a deposition that "[w]e just kind of went from Mantra

one day to GGW Brands the next day . . . ."  (Pl.'s Ex. 72 at 12.)  People employed by

Mantra one day were employees of GGW Brands the next day.  (<u>Id.</u> at 13.)  Both entities

were overseen and run by Francis.  (<u>Id.</u> at 14.)  GGW Events and GGW Magazine also

continued operations that had been previously done by Mantra.  (Pl.'s Ex. 73 at 16-17.)

In October 2011, an Entity Classification Election was filed with the Internal Revenue Service on behalf of Path Media. (Pl.'s Ex. 60.) Path Media had been organized as a limited liability company under the laws of Nevis, an island in the Caribbean Sea. (Id.) Francis was the owner and manager. (Id.) An operating agreement provides that Path Media was formed by Asia Trust Ltd,[10] as trustee of the Ridgewood Global Trust, which had been organized under the laws of the Cook Islands. (Pl.'s Ex. 61.) Francis signed that agreement as company and manager. (Id. at 9.) One week earlier, the Ridgewood Global Trust had been established. (Pl.'s Ex. 62.) Francis was the principal and one of two beneficiaries; the other beneficiary was Brain Candy, LLC. (Id.) Excluded beneficiaries were creditors of Francis. (Id.) Klueger had written Francis earlier in the month to recommend that an offshore entity be formed for the purpose of holding his intellectual property. (Pl.'s Ex. 79A.) Another offshore entity would be formed as a holding company to insulate his ownership. (Id.) And, a foreign trust would be formed "in a jurisdiction that is friendly to [him, Francis] and hostile to [his] creditors." (Id.) The Cook Islands were recommended. (Id.)

The next month, November 2011, GGW Marking and GGW Brands conveyed their "entire interest and goodwill" in the Girls Gone Wild trademark to Path Media. (Pl.'s Ex. 48.) The conveyances were signed by Francis as manager of both conveyors. (Id.) Mantra

---

[10]On a Client Assessment Data Form completed in October 2011 for purposes of forming the Asia Trust Limited, Francis reported that the business related to the Girls Gone Wild brand had been operated under Mantra but was currently being operated under GGW Brands, LLC. (Pl.'s Ex. 8.)

Asia Trust was "a company . . . in the business of being a trustee." (Pl.'s Ex. 49 at 72.)

did the same.  (Pl.'s Ex. 79.)  American Express was advised in January 2012 that the ownership of the "GGW Direct, LLC" website remained owned by GGW Direct, LLC, but the *identity* of the ownership had been changed to Path Media "for limitation of liability purposes."  (Pl.'s Ex. 79B.)  A representative of Asia Trust notified the five GGW LLC entities on February 25, 2013, that, "[e]ffective immediately, all oral and written license agreements" with those entities for use of any of the Girls Gone Wild trademarks was terminated and that they could "no longer produce, sell or make use of any products or services" using such trademarks without the express written consent of Path Media, the owner of the trademarks, or its authorized licensee.  (Pl.'s Ex. 84.)  The same day, Path Media and GGW Direct entered into a trademark license agreement.  (Pl.'s Ex. 85.)  The next day, Francis was advised by an attorney that the GGW entities were to have no access to Path Media's licenses and that the license agreement would be between Path Media and another company, Argyle.[11]  (Pl.'s Ex. 86.)  Also, all Girls Gone Wild related uniform resource locators ("URLs") were to be held by Path Media.  (Pl.'s Ex. 87.)  Konrad Gatien, the attorney who represented GGW Brands, GGW Marketing, and Path Media in their intellectual property matters, later declared that he was unaware that any of the foregoing transfers were made for "any consideration, monetary or otherwise," given by Path Media. (Pl.'s Ex. 80.)  Similarly, Robert Klueger, another attorney, testified in a deposition that the

---

[11]There are at least two "Argyle" entities, Argyle Media Sales, LLC, and Argyle Online, LLC ("Argyle Online").  (Pl.'s Ex. 96 at 3.)  Which one was being referred to is not explained. Argyle Online, LLC, was allegedly the producer of the Girls Gone Wild videos.  (Pl.'s Ex. 89 at 5.)

companies that transferred their intellectual property to Path Media received nothing in return.  (Pl.'s Ex.49 at 71.)

On February 27, 2013, two days after Asia Trust's letter, GGW Brands, GGW Magazine, GGW Direct, and GGW Events all filed for bankruptcy protection in the United States Bankruptcy Court for the Central District of California.  (Pl.'s Exs. 67-70.)  The estimated assets of each were $0 to $50,000.  (Id.)  Each petition was signed by Chris Dale as manager[12] and listed Plaintiff as a creditor of a disputed claim.  (Id.)  Path Media was listed on GGW Direct's schedule as holding an unsecured nonpriority claim for $1,500,000.00 for unpaid licensing fees.  (Pl.'s Ex. 68.)

Two months after GGW Brands filed for bankruptcy protection, a hearing was held on the trustee's request for a temporary restraining order against Francis.  (Pl.'s Ex. 89.)  After hearing evidence of Francis' behavior toward GGW Brands' employees, one was granted, prohibiting Francis for fourteen days from entering the office space shared by GGW Brands with two companies for which Francis worked and from interfering with GGW Brands' business.  (Id.)

Also in April 2013, Mantra filed for bankruptcy protection in the United States Bankruptcy Court for the Central District of California.  (Pl.'s Ex. 11.)  Its estimated assets

---

[12]In August 2012, Dale testified that he only had a title or job responsibility with GGW Brands, LLC.  (Pl.'s Ex. 73 at 13.)  One week before the bankruptcy petitions were filed, he declared that he was the manager of Pablo Holdings and of GGW Brands, LLC, and that GGW Magazine, GGW Direct, and GGW Events were all wholly-owned subsidiaries of GGW Brands, LLC.  (Pl.'s Ex. 88.)  The bankruptcy court later noted that although Dale was the purportedly the manager of the holding company, Pablo Holdings, for the GGW entities, they were controlled by Francis.  (Pl.'s Ex. 98 at 3-5.)

were $0 to $50,000.  (Id. at 1.)  The petition was signed by Francis as Mantra's representative.  (Id. at 3.)  The same day, MRA filed in the same court for bankruptcy protection.[13]  (Id. at 4-6.)  This petition also alleged assets in the same range as Mantra's and was signed by Francis as MRA's representative.[14]  (Id.)  MRA had earlier been dissolved as a limited liability company.  (Pl.'s Exs. 36-37.)  At the time, its only listed member was Mantra.  (Pl.'s Ex. 38.)

In October, the bankruptcy court presiding over the GGW entities' petitions entered partial summary judgment in the debtors' favor in an adversary proceeding filed by Argyle Online, Path Media, and Francis.  (Pl.'s Ex. 96.)  The court specifically found that the November 2011 and February 2013 transfers were all "made 'with actual intent to hinder, delay, or defraud any entity to which [such Debtor(s)] was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.'"  (Id. at 4, 5; quoting 11 U.S.C. § 548(a)(1); alteration in original.)  In a separate ruling, the court found that "Francis managed and controlled Path Media and he continues to do so."  (Pl.'s Ex. 98 at 8.)  In a final judgment, the court ordered that the November 2011 assignments to Path Media of the listed trademarks and domain names and the subsequent February 2013 terminations of the GGW entities' rights to use those trademarks and domain names were avoided,

---

[13]A schedule of creditors is not included with copies of the bankruptcy petitions for Mantra and MRA.

[14]As he had for Mantra, Francis marked on a Corporate Ownership Statement filed with the United States Bankruptcy Court for the Central Division of California that he was "the president or other officer of an authorized agent" of MRA.  (Pl.'s Ex. 39.)

recovered, and preserved for the benefit of the GGW entities' estates. (Pl.'s Ex. 98 at 5-6.) Payments made by GGW Direct to Argyle Online in February 2013 were also avoided, recovered, and preserved for the benefit of the GGW entities' estates. (<u>Id.</u> at 7.)

Evidence before the Court also includes that of another limited liability company, J.F., LLC, being incorporated in California in September 2004. (Pl.'s Ex. 53.) Francis is the only member; the business is real estate. (<u>Id.</u>) He continued to be so in August 2008 and September 2012. (Pl.'s Exs. 54, 55.)

Pepe Bus, LLC, was organized in Montana in December 2005 as a limited liability company. (Pl.'s Ex. 56.) Its only member was Francis. (<u>Id.</u>) It was voluntarily terminated in March 2012. (<u>Id.</u>)

## <u>Discussion</u>

<u>Summary Judgment Standard.</u> Rule 56(a) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **MidAmerican Pension and Emp. Benefits Plans Admin. Comm. v. Cox**, 720 F.3d 715, 718 (8th Cir. 2013); <u>see also</u> **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986) (discussing prior Rule 56(c), the predecessor to Rule 56(a) of the Federal Rules of Civil Procedure). "The movant 'bears the initial responsibility of informing the . . . [C]ourt of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" **Torgerson v. City of Rochester**, 643 F.3d

1031, 1042 (8th Cir. 2011) (en banc) (quoting <u>Celotex Corp.</u>, 477 U.S. at 323) (last two alterations in original).  "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing a genuine issue for trial.'"  **Id.** (quoting <u>Celotex Corp.</u>, 477 U.S. at 324).  The existence of a factual dispute is not enough alone to avoid entry of summary judgment; "rather, the dispute must be outcome determinative under the applicable law."  **Hammer v. City of Osage Beach, MO**, 318 F.3d 832, 837 (8th Cir. 2003).  Additionally, "[e]ven if a motion for summary judgment . . . stands unopposed, the . . . court must still determine that the moving party is entitled to judgment as a matter of law on that claim."  **Interstate Power Co. v. Kansas City Power & Light Co.**, 992 F.2d 804, 807 (8th Cir. 1993).

<u>Count II: Piercing the Corporate Veils.</u>  In Count II of her complaint, Plaintiff argues that all the entity Defendants are the alter ego of Francis.

"The alter ego theory is a separate and distinct cause of action under Missouri law."[15] **Saidawi v. Giovanni's Little Place, Inc.**, 987 S.W.2d 501, 504 (Mo. Ct. App. 1999).  "'Under the alter ego rule, when a corporation is so dominated by a person as to be a mere instrument of that person and is indistinct from the person controlling it, then the court will disregard the corporate form if to retain it would result in injustice.'"  **Id.** at 504-05(quoting <u>Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp.</u>, 885 S.W.2d 771, 773 (Mo. Ct. App. 1994)).  "'To pierce the corporate veil, a plaintiff must meet a two-part test:

---

[15]It is undisputed that Missouri law applies in this diversity case.

first, the corporation must be controlled and influenced by persons or by another corporation; second, evidence must establish that the corporate cloak was used as a subterfuge to defeat public convenience, to justify a wrong, or to perpetrate a fraud.'" **Id.** at 505 (quoting R. Webbe Corp., 987 S.W.2d at 773, 774). "The control must not be over just finances; it must also be over the policy and business practice with respect to the particular transaction at issue." **Ritter v. BJC Barnes Jewish Christian Health Sys.**, 987 S.W.2d 377, 384 (Mo. Ct. App. 1999). "It is not necessary, however, to show actual fraud." **Mobius Mgmt. Sys., Inc. v. West Physician Search, LLC**, 175 S.W.3d 186, 188 (Mo. Ct. App. 2005).

The defendants in Plaintiff's state court case were Mantra and MRA. Mantra was incorporated in Oklahoma in 1999. In 2006, Mantra pled guilty in the United States District Court for the Northern District of Florida to charges of violating 18 U.S.C. §§ 2257(f)(1), 2257(f)(4). Part of the plea agreement involved an agreement for the government to defer prosecution of MRA. The sentencing court mandated that Francis appear for the sentencing, finding that he dominated and controlled Mantra. In answering the allegations of a civil lawsuit, Francis, MRA, and Aero all admitted that Francis was the president of Mantra and the managing member of MRA and Aero.[16] The Eleventh Circuit later found that Francis owned and controlled Mantra, MRA, and Aero. The following year, Rayment, the attorney who filed for incorporation of Mantra, averred that Mantra's assets had been transferred by Francis to avoid payment of its debts and to defraud its creditors. The transfer of its

---

[16]Francis' admission illustrates his lack of credibility. Two years later, he testified in a deposition that he had ceased any role of any control or involvement in Mantra in 2008 or 2009.

contracts to GGW Direct and of its employees to GGW Brands without any evidence of consideration supports the accuracy of the affidavit. In January 2013, the Oklahoma district court found that Francis, Mantra, GGW Brands, GGW Inc., GGW Direct, and GGW Marketing were each alter egos of the others and were liable for each other debts. Three months later, Mantra and MRA filed for bankruptcy protection.

Factors relevant to a determination whether control by a person or corporation over another corporation was to the extent required for the corporate veil to be pierced include "the ownership and creation of both corporations, the management of the corporations, the physical location of corporate offices, and the transfer of assets, contracts, and employees between the corporations." **Greater St. Louis Constr. Laborers Welfare Fund v. Mertens Plumbing and Mech., Inc.**, 552 F. Supp.2d 952, 955-56 (E.D. Mo. 2007). See also **Mobius Mgmt. Sys.**, 175 S.W.3d at 188-89 (holding that the corporate veil may be pierced when "its assets are stripped to avoid creditors"); **Dwyer v. ING Inv. Co.**, 889 S.W.2d 902, 905 (Mo. Ct. App. 1994) (holding that "[m]anipulation of assets" is an indicator of justifying piercing corporate veil).

In the instant case, it is undisputed that Francis owned and controlled Mantra, MRA, Aero, GGW Direct, and GGW Brands. Assets of one corporation were transferred to another for the purpose of avoiding creditors. Mantra and MRA, corporations depleted of assets, then filed for bankruptcy protection. This timing supports piercing their corporate veil. See **Dave Kolb Grading, Inc. v. Lieberman**, 837 S.W.2d 924, 937 (Mo. Ct. App. 1992)

(necessary causation between debtor's action and harm to creditor was sufficiently established in case in which individual's actions rendered corporation insolvent); **South Side Nat'l Bank in St. Louis v. Winfield Fin. Servs. Corp.**, 783 S.W.2d 140, 144 (Mo. Ct. App. 1989) (finding that indicia of fraud to support piercing of corporate veil is resultant insolvency of debtor).

Accordingly, the Court finds that Mantra, MRA, and Aero are the alter egos of Francis and of each other and all are liable for the other' debts, including Plaintiff's judgment.[17]

The GGW entities are also alter egos of Francis and of each other. As noted above, the Oklahoma district court found GGW Brands, GGW Inc., GGW Direct, and GGW Marketing to be alter egos of each other and of Mantra and Francis. The Nevada district court found that Francis used GGW Direct to frustrate creditors and was GGW Direct's alter ego. GGW Direct was the transferee of Mantra's contracts, without compensation; GGW Brands was the transferee of Mantra's employees; and GGW Events and GGW Magazine continued Mantra's operations. GGW Marketing and GGW Brands conveyed, without compensation, their interests in the Girls Gone Wild trademark to Path Media. GGW Direct retained ownership of the website of its name but transferred the identity of the website to Path Media. After all the transfers were made and the GGW entities were depleted of assets, they filed for bankruptcy protection. After hearing evidence of attempts by Francis to

_____

[17]As noted below, however, because Mantra and MRA have filed for bankruptcy protection, judgment will not be entered against them at this time.

- 18 -

intimidate GGW Brands employees, to fire at least one employee, and to request that GGW Brands' property be removed from its space, the bankruptcy court issued a temporary restraining order prohibiting Francis from entering GGW Brands' offices and from interfering with its business. The depletion of assets plus Francis' ownership and control of the GGW entities support a piercing of the corporate veil.

Path Media was the recipient of GGW entities' properties. There was no consideration paid for what Francis represents is valuable property. See Plaintiff's Exhibit 10 ("Business Bio" of Francis in which he describes Girls Gone Wild business concerns as a $100 million company). It was purposefully organized in a jurisdiction that would be friendlier to Francis than to his creditors. "Under the alter ego or instrumentality rule, when a corporation is really indistinct from the person controlling it, then the corporate form may be disregarded if to retain it would result in injustice." **Comninellis v. Comninellis**, 99 S.W.3d 502, 514 (Mo. Ct. App. 2003). Injustice would result in the instant case if Path Media were not recognized as the alter ego of the GGW entities and of Francis.

Blue Horse was incorporated in 2002. After the initial articles of organization were filed, the only address listed was that for Francis. In 2008, he was the only member, and remained so in 2012. Blue Horse owned the house in which Francis lived. An indicia of fraud is the possession by the debtor of property titled in a corporation's name. See **South Side Nat'l Bank**, 783 S.W.2d at 144.

Pepe Bus was incorporated in 2005 as a limited liability company. Francis is the only managing member listed. Plaintiff argues that Francis commingled funds from Pepe Bus with Mantra, GGW Direct, and his own funds. In support, she submits an exhibit listing case receipts of Francis in 2010 and 2011 and a "cash analysis" for Francis for 2010. (<u>See</u> Pl.'s Ex. 90.) She does not, however, explain how this list illustrates any commingling. And, Francis' position as the only member of Pepe Bus is insufficient in and of itself to support piercing the corporate veil. <u>See</u> **<u>Thomas Berkeley Consulting Engineer, Inc. v. Zerman</u>**, 911 S.W.2d 692, 696 (Mo. Ct. App. 1995) (rejecting creditor's reliance on debtor being only owner of corporation in action to pierce corporate veil to satisfy judgment and noting that is has previously held that "a corporation will be regarded as a separate legal entity even though there is but a single stockholder"); <u>accord</u> **<u>Mitchell v. K.C. Stadium Concessions, Inc.</u>**, 865 S.W.2d 779, 784 (Mo. Ct. App. 1993).

Similarly, with J.F., the only evidence offered in support of her argument that J.F. is the alter ego of Francis is that J.F. was formed by and solely owned by Francis. This also is insufficient.

For the foregoing reasons, the Court finds that Francis, Path Media Holdings, LLC GGW Brands, LLC; GGW Brands, Inc.; GGW Direct, LLC; GGW Events, LLC; GGW Magazine, LLC; GGW Marketing, LLC; Aero Falcons, LLC; Blue Horse Trading, LLC ; Mantra Films, Inc.; and MRA Holdings, LLC are alter egos of each other. Of these defendants, only Francis, Path Media Holdings, LLC; GGW Brands, Inc.; Aero Falcons,

LLC; and Blue Horse Trading, LLC, have not filed for bankruptcy protection. They will be found to be jointly and severally liable for the $5,772,558.00 judgment.

Count I:  Missouri Uniform Fraudulent Transfer Act.  The Missouri Uniform Fraudulent Transfer Act ("MUFTA"), Mo.Rev.Stat. § 428.005 to 428.059,

> makes the following transfers fraudulent as to present and future creditors:
>
> 1. A transfer or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor;
> (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (b) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

**8000 Maryland, LLC v. Huntleigh Fin. Servs. Inc.**, 292 S.W.3d 439, 443 n.2 (Mo. Ct. App. 2009) (citing Mo.Rev.Stat. § 428.024.1).  "A 'transfer' is considered to be 'every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.'" **Fleming Cos. v. Rich**, 978 F.Supp. 1281, 1295 (E.D. Mo.1997) (quoting Mo.Rev.Stat. § 428.009(12)).  And, with regard to the MUFTA, "in order for a transaction to be considered valid and enforceable, there must be some

'reasonably equivalent' benefit given in exchange for the conveyance of the asset." **Id.** at

1296.

> To set aside a transfer as fraudulent under MUFTA, it is necessary to show that the transfer was made with an intent to hinder, delay, or defraud creditors. Intent to defraud must be shown by clear and convincing evidence. Fraudulent intent is rarely proven by direct evidence; thus, it is acceptable in Missouri courts to determine the presence of fraud by considering particular badges of fraud. The badges of fraud include: 1) a conveyance to a spouse or near relative; 2) inadequacy of consideration; 3) transactions different from the usual method of transacting business; 4) transfers in anticipation of suit or execution; 5) retention of possession by the debtor; 6) the transfer of all or nearly all of the debtor's property; 7) insolvency caused by the transfer; and 8) failure to produce rebutting evidence when circumstances surrounding the transfer are suspicious. For a transfer to be found fraudulent, several indicia of fraud must be shown. More than one badge of fraud must be present.

**Birkenmeier v. Keller Biomedical, LLC**, 312 S.W.3d 380, 389 (Mo. Ct. App. 2010)

(internal citations omitted). It is undisputed that Mantra Films, Inc., and MRA Holdings,

LLC, are debtors and Plaintiff is their judgment creditor.

The discussion in the section above clearly and convincingly shows transfers of the

two companies' assets were "made with an intent to hinder, delay, or defraud creditors." **Id.**

If fraud is sufficiently established, the MUFTA further provides that a creditor may

obtain:

> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>
> (2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by applicable laws of this state;

(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure,
(a) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
(b) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
(c) Any other relief the circumstances may require.

Mo.Rev.Stat. § 428.039.1  Also, "[i]f a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds."  Mo.Rev.Stat. § 428.039.2.

Plaintiff requests equitable relief in the form of an order holding Francis and all the entity Defendants jointly and severally liable for the $5,772,558.00 judgment.  As noted above, however, this action is stayed as to several of those Defendants.  Judgment will be entered accordingly.

Plaintiff further requests an award of punitive damages against all Defendants. Missouri courts have held that the language of § 428.039(3)(c) ("[a]ny other relief the circumstances may require") grants courts the authority to award punitive damages in MUFTA cases.  see e/g/ **Volk Constr. Co. v. Wilmescherr Drusch Roofing Co.**, 58 S.W.3d 897, 900 (Mo. Ct. App. 2001).  "[P]unitive damages must in general bear some relation to the injuries and to the manner of their infliction."  **Id.** at 901.  Plaintiff does not distinguish between the actions of any of the Defendants, including those in bankruptcy, and how those actions contributed to her injuries.  For instance, she would hold Aero and Blue Horse jointly and severally liable for the same amount of punitive damages as Francis, yet Francis is

clearly more of a puppet master of the fraudulent transfers than were Aero and Blue Horse. Her request for punitive damages will be denied.

Count III: California Fraudulent Transfer Act.  Noting that her claim under the California Fraudulent Transfer Act is similar to her claim under MUFTA, Plaintiff seeks summary judgment on Count III, including an award of punitive damages.  The California Court of Appeals has held, however, that a creditor may not recover a money judgment against a debtor under the Uniform Fraudulent Transfer Act, codified in California at Cal.Civ.Code § 3439-3429.12, if the money judgment sought "would partially duplicate the money judgment" the creditor had already obtained, "in violation of the rule prohibiting double recovery for the same harm."  **Renda v. Nevarez**, 167 Cal.Rptr. 3d 874, 877 (Cal. Ct. App. 2014).

Plaintiff's request for summary judgment on Count III is denied.

## Conclusion

For the reasons set forth above, the Court finds that Joseph Francis, Path Media Holdings, LLC GGW Brands, LLC; GGW Brands, Inc.; GGW Direct, LLC; GGW Events, LLC; GGW Magazine, LLC; GGW Marketing, LLC; Aero Falcons, LLC; Blue Horse Trading, LLC ; Mantra Films, Inc.; and MRA Holdings, LLC are alter egos of each other. Joseph Francis, Path Media Holdings, LLC; GGW Brands, Inc.; Aero Falcons, LLC; and Blue Horse Trading, LLC, are jointly and severally liable for the $5,772,558.00 judgment entered by the Missouri Circuit Court in Plaintiff's favor.

The Court further finds that Mantra Films, Inc., and MRA Holdings, LLC, made transfers of their assets in violation of MUFTA. Joseph Francis, Path Media Holdings, LLC; GGW Brands, Inc.; Aero Falcons, LLC; and Blue Horse Trading, LLC, are jointly and severally liable under the MUFTA for the $5,772,558.00 judgment entered by the Missouri Circuit Court in Plaintiff's favor.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment is **GRANTED** in part as set forth above as to Counts I and II and **DENIED** as to Count III. [Doc. 139]

**IT IS FURTHER ORDERED** that Plaintiff is to advise the Court in writing **on or before July 31, 2014**, of the status of the bankruptcy proceedings of GGW Brands, LLC; GGW Direct LLC; GGW Events, LLC; GGW Magazine, LLC; GGW Marketing, LLC; Mantra Films, Inc.; and MRA Holdings, LLC.

An appropriate partial Judgment shall accompany this Memorandum and Order.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  8th  day of May, 2014.